# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CARTER FARM, LLC, a Delaware Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | *Civil Action No. 1641-VCG* |
| NEW CASTLE COUNTY, a political subdivision of the State of Delaware, | ) ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

Date Submitted: July 1, 2014
Date Decided: July 17, 2014

Samuel J. Frabizzio, Wilmington, Delaware, Attorney for the Plaintiff.

Bernard Pepukayi, Mary A. Jacobson, and Brian Merritt, of New Castle County Office of Law, New Castle, Delaware, Attorneys for the Defendant.

GLASSCOCK, Vice Chancellor

On September 10, 2001, the Plaintiff submitted a plan to New Castle County for a residential development in a rural area north of Middletown. That plan, and the Defendant's actions upon it, allegedly created vested rights in the Plaintiff, and ultimately became the subject of this suit, filed in 2005.

Much has happened since that long-ago submission in 2001. The twin towers were destroyed. The United States has fought two wars. A new president was elected, and re-elected. The BlackBerry was introduced, became ubiquitous, then obsolete. The stock market waxed fat, waned, then waxed again. Not incidental to this action, the land boom went bust. Then-kindergarteners are now high school graduates, and the best part of a generation has passed away. And yet, this suit remains. It has spent nearly all of the last nine years stayed, as the parties negotiated, reaching a settlement of the action in 2007, and then attempted to renegotiate a new agreement which would have superseded that settlement.

That this action has persisted, dormant under a series of status quo orders, reflects no credit on my administration of it as a part of my docket. In any event, for the reasons that follow, I find that the parties reached a final settlement of the action in 2007, failed to rescind that settlement, and that this suit must be dismissed, leaving the parties to abide by the settlement, modify it, or litigate over its breach, as they find appropriate.

2

## I. FACTS

The Plaintiff here, Carter Farm LLC, is a real estate developer attempting to develop approximately 400 single-family residential lots in southwestern New Castle County. The Plaintiff filed its initial Complaint in this action in September 2005, seeking to enjoin the Defendant, New Castle County, from determining that a development plan, initiated on behalf of the Plaintiff in 2001, had expired. That initial development plan anticipated providing the Carter Farm development sewer services through construction of a sewer trunk line that would connect to a proposed County sewer system; in other words, the plan anticipated "the installation (initially at Plaintiff's expense) of a permanent sewer system extending from the Development approximately five miles to a connection point with [the County's] planned sewer system for southern New Castle County."[1] According to the Defendant, however, partway through the Carter Farm approval process, plans for the construction of a new County sewer system were "scaled back,"[2] rendering the sewer provisions in the initial plan untenable.

On November 20, 2007, the parties entered into a settlement agreement (the "2007 Settlement Agreement")—approved by New Castle County Council and the

---

[1] Compl. ¶ 8.
[2] Def.'s Reply Br. at 8-9.

County Executive—resolving the underlying litigation.[3] Under the terms of the 2007 Settlement Agreement, the Defendant agreed to "approve a sewer project [consisting of a Rapid Infiltration Basins System, or 'RIBS'] constructed by Carter Farm on the Carter Farm property with a total capacity of 300,000 gallons to service" the development; in exchange, the Plaintiff agreed to pay the Defendant $24 million, in $4 million installments, with the first payment due "five business days after final non-appealable record approval for" the development.[4] The 2007 Settlement Agreement further provides that:

> The parties acknowledge that final settlement documents implementing the details of this Agreement shall be necessary and if, for technical reasons, the precise requirements of the Agreement cannot be fully met, the parties agree to use their best efforts to achieve their mutual objectives as set forth in this Agreement. At such time as the final settlement documents are executed, the parties shall also execute a Stipulation of Dismissal of the Litigation and Mutual Releases with respect to those items encompassed within the Litigation with each party to bear their own costs and attorney fees.
> . . .
> Time is of the essence and material to the provisions of this Agreement.[5]

Despite that provision, the parties have never executed final settlement documents and the Plaintiff has never executed a Stipulation of Dismissal.

---

[3] I note that, in addition to resolving the sewer plan for the Carter Farm development, the 2007 Settlement Agreement provides for sewer in a second development, Country Club Estates, as well.

[4] Third Am. Compl. Ex. N (2007 Settlement Agreement) at Arts. II, III.

[5] *Id.* at Art. V.

4

The parties worked together under the terms of the 2007 Settlement Agreement until August 2010. At that time, according to the Defendant, the Plaintiff "determined the terms of the Settlement Agreement were no longer economically feasible," and as a result, requested that the Defendant "agree [to] terminate the Settlement Agreement and agree to new terms."[6] The parties subsequently engaged in negotiations over a period of several years, throughout 2010, 2011, 2012, and 2013, in an attempt to reach a new settlement agreement; the significant change anticipated was abandoning the construction of a RIBS system in favor of building a regional County sewer system, ultimately to connect to the County's existing sewer system. Despite many meetings between the parties, highlighted below, a new agreement was never memorialized in writing or approved by the New Castle County Council or Executive. Nevertheless, as described in greater detail below, the Plaintiff now contends that the parties orally agreed to rescind the 2007 Settlement Agreement at an August 11, 2010 meeting, and subsequently reached a new oral settlement agreement on August 10, 2012. Shortly after that alleged oral agreement was entered, however, County administration changed, and in October 2013, the Defendant informed the Plaintiff that it understood the parties were still bound by the 2007 Settlement Agreement. Nevertheless, the Plaintiff has declined to proceed under the terms of the 2007

---

[6] Def.'s Op. Br. at 9. The Plaintiff does contend, however, that the Defendant likewise would have benefitted from a superseding settlement agreement.

5

Settlement Agreement, which at this time require the Plaintiff's submission of a final development plan for the Defendant's approval.

On February 12, 2014, the Defendant filed a "Motion to Enforce the 2007 Settlement Agreement." In its briefing, the Defendant requests an order directing the Plaintiff to specifically perform its obligations under the 2007 Settlement Agreement by submitting a final plan for the Defendant's approval; alternatively, the Defendant requests that the Court find the Plaintiff in material breach of the Settlement Agreement, and dismiss the underlying action. The Defendant's Motion is peculiar, in that it has never filed a counterclaim or any other affirmative request for relief, aside from its "Motion to Enforce." On March 26, 2014, the Plaintiff filed a Third Amended Complaint. The Third Amended Complaint asserts six counts for relief. Counts I, II, and III—which form the basis of the underlying litigation concerning the 2001 development plan—assert claims based on promissory estoppel, protection of vested rights, and regulatory taking. Count IV seeks a declaration that the parties agreed in August 2010 to rescind the 2007 Settlement Agreement; Count V seeks a declaration that the parties entered into a new settlement agreement in August 2012; and Count VI alleges breach of the covenant of good faith and fair dealing. On the same day, the Plaintiff moved to specifically enforce the purported 2012 oral settlement agreement, and for a

judgment that the 2007 Settlement Agreement was abandoned and that the subsequent 2012 oral settlement agreement binds the parties.

On July 1, 2014, I heard oral argument on the Cross-Motions, which the parties agree are governed by Court of Chancery Rule 56. I denied the Plaintiff's Motions under that standard at the conclusion of oral argument. The remainder of this Memorandum Opinion addresses the Defendant's "Motion to Enforce the 2007 Settlement Agreement," which is, in reality, a motion for summary judgment on Counts IV, V, and VI of the Plaintiff's Third Amended Complaint. For the reasons that follow, the Defendant's Motion—so construed—is granted.

## II. STANDARD OF REVIEW

As noted above, the parties agree that the Defendant's "Motion to Enforce the 2007 Settlement Agreement" is governed by Court of Chancery Rule 56. This Court may grant a motion for summary judgment under Rule 56 where the movant demonstrates that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7] "In considering the motion, the Court must view the facts in the manner most favorable to the nonmoving party and make all factual inferences in favor of the nonmoving party."[8] However, "when the nonmoving party would have the burden of proof at trial, he must show specific facts demonstrating a plausible ground for his claim,

---

[7] Ct. Ch. R. 56(c).
[8] *Izquierdo v. Sills*, 2004 WL 2290811, at *1 (Del. Ch. June 29, 2004).

7

and cannot rely merely upon allegations in the pleadings or conclusory assertions in the affidavits."[9]

## III. ANALYSIS

The Defendant seeks to enforce the November 20, 2007 Settlement Agreement on the basis that no genuine issue of material fact exists that could call into question the validity of that Agreement. The Plaintiff agrees that the 2007 Settlement Agreement bound the parties at the time it was entered, but contends that (1) the parties entered into an oral agreement on August 11, 2010 rescinding the Settlement Agreement, and (2) the parties entered into a new, oral settlement agreement on August 10, 2012. For the reasons that follow, I find that the Plaintiff has failed to demonstrate the existence of a genuine issue of material fact bearing on the enforceability of the 2007 Settlement Agreement.

### 1. The Alleged August 11, 2010 Agreement to Rescind the 2007 Settlement Agreement

As noted above, Count IV of the Plaintiff's Third Amended Complaint seeks a declaration that on August 11, 2010, the parties entered into an oral agreement to rescind the 2007 Settlement Agreement. According to the Plaintiff, "[b]ased on [negotiations] that occurred between January 4, 2010, and the August 11, 2010 meeting, the parties had agreed as of that August 11, 2010 meeting that the 2007 Settlement Agreement had been abandoned and the parties would continue

---

[9] *Id.* (internal quotation marks omitted).

negotiations to agree upon all essential terms and conditions of a new Agreement."[10] Despite that bare assertion, the record upon which the Plaintiff relies overwhelmingly demonstrates that no such agreement was ever reached. Specifically, Exhibit 14 to the Plaintiff's Answering Brief contains an email communication from Plaintiff's counsel, dated August 18, 2010, just one week after the alleged agreement to rescind. In that email, Plaintiff's counsel stated:

> At the Meeting in your office on August 11, we agreed that you would promptly send to me a Letter stating that while we continue to work out the arrangements for the proposed Final Agreement, that based on the vested rights of Carter Farm, LLC and Country Club Estates created by the Chancery Court Order that the timeframe for having to file a Record Plan Submission for Carter Farm will be extended for 18 months beyond 8/23/10.[11]

The very next day, on August 19, the Defendant responded to Plaintiff's counsel, explaining:

> We have continued our discussions pursuant to Rule 408 in an effort to reach a settlement agreement relating to the above legal action between New Castle County and Carter Farm. You and your clients have advised the County that the settlement agreement signed by the parties is no longer economically feasible as a result of the deep and lengthy recession in the housing industry. *You have requested that the County consider terminating the agreement* and entering into a new agreement so the project will remain viable for the benefit of Carter Farm and the citizens of New Castle County. We have discussed various proposals in an effort to find a solution that could be fair and beneficial to both Carter Farm and the citizens of New Castle County.
>
> . . .

---

[10] Pl.'s Answering Br. at 42-43.

[11] *Id.* Ex. 14 (Aug. 18, 2010 email from Plaintiff's counsel to Defendant's counsel).

9

In the absence of the Court's status quo order Carter Farm's deadline for filing its record plan would expire on or about August 23, 2010. This letter is to confirm the County's position that *in the event we can agree to terminate the existing agreement* and enter into a new agreement pursuant to the continuation of our Rule 408 settlement discussions, the County will agree to revise the land use deadlines in the settlement agreement . . . .[12]

As the Defendant made clear in its August 19 letter, it did not believe the 2007 Settlement Agreement had been abandoned; rather, the Defendant anticipated that the parties might, in the future, agree to terminate the Settlement Agreement. In fact, the response of Plaintiff's counsel, sent by letter the same day, also reflected the understanding that the Settlement Agreement had not yet been abandoned, noting that:

[It] may be in our mutual best interest that your Letter [memorializing the parties' agreement to extend the deadline for submission of a record plan] be revised merely to reference after the first sentence in the third paragraph on page 1 that it is the intention of the parties *that when the existing Settlement Agreement is terminated* and the parties enter into a new Agreement that Carter Farm will then submit a Revised Preliminary Plan and that based on the vested rights claim asserted in the Court's *Status Quo* Order, that Carter Farm will revise, process and submit its Record Plan not later than 18 months after the date of submission of the Revised Preliminary Plan.[13]

It is clear from that letter that Plaintiff's counsel himself did not believe, at that time, that the parties had entered into a binding agreement to rescind the 2007 Settlement Agreement, just eight days prior. In fact, that understanding is

---

[12] *Id.* (Aug. 19, 2010 letter from Defendant's counsel to Plaintiff's counsel) (emphasis added).
[13] *Id.* (Aug. 19, 2010 letter from Plaintiff's counsel to Defendant's counsel) (emphasis added).

reinforced by Plaintiff's counsel's inclusion of the following provision in a February 2011 proposed settlement agreement, not subsequently entered:

> *Upon the approval of this Agreement* by New Castle County Council and the execution of same by the Parties, the SETTLEMENT AGREEMENT dated November 20, 2007 by and between Carter Farm and the County *shall be deemed to be legally terminated* and VOID for all purposes.[14]

Thus, the record indicates that even as late as February 2011, the parties considered the 2007 Settlement Agreement binding.

Although it is clear from these communications that both parties agreed, even after the August 11, 2010 meeting, that the 2007 Settlement Agreement remained in effect, the Plaintiff contends that whether the parties in fact rescinded the Settlement Agreement at the August 11, 2010 meeting is a triable issue of fact that cannot be resolved on this Motion. In support of that contention, the Plaintiff submits affidavits from Louis J. Capano, F. Thomas Prusak, John M. Thaeder, and David M. Culver. I have carefully considered those affidavits, which rely solely on conclusory statements[15] and statements of fact by persons without personal

---

[14] Def.'s Reply Br. Ex. 34 (Wilson Aff.) at Ex. 12, Art. I (Feb. 24, 2011 email from Plaintiff's counsel to Defendant's counsel attaching proposed settlement agreement) (emphasis added).

[15] *See, e.g.*, Capano Aff. at ¶ 5 ("Based on the discussions/negotiations that occurred between the parties as outlined in the Carter Farm Opening Brief filed with this Court on March 26, 2014, I considered the 2007 Settlement Agreement terminated for all purposes as of August 11, 2010. . . . Based on representations made at several of the meetings between January 4, 2010 and August 11, 2010 by Gregg E. Wilson, Esquire, it is my understanding the County had agreed that the 2007 Settlement Agreement had been terminated as of August 11, 2010 and that Gregg E. Wilson had full power and authority on behalf of the County to represent that as the decision of the County.").

knowledge of those facts.[16] The affidavits do not contain any statements of fact regarding the Defendant's objective manifestations of assent at either the August 11, 2010 meeting or August 10, 2012 meeting. As noted above, on a motion for summary judgment, a party may not "rely merely upon . . . conclusory assertions in the affidavits"[17] to create an issue of material fact.

Further, when asked what evidence Plaintiff's counsel could present at trial to challenge the clear evidence already presented, counsel equivocated:

> THE COURT: So it's clear that the County didn't consider that it had reached an agreement to rescind the 2007 Settlement Agreement at the meeting that you claim is when that resulted.
>
> MR. FRABIZZIO: Your Honor, obviously that's the position of the County. The County contends.
>
> THE COURT: It's a letter that reflects the state of mind of the County.
>
> MR. FRABIZZIO: I understand, Your Honor.
>
> THE COURT: You think the County—is it your position that the County reached an agreement to terminate the Settlement Agreement in 2010, but then a few days later wrote a letter saying "we haven't reached an agreement," and if it is, why would they do such a thing?
>
> MR. FRABIZZIO: Your Honor, I have no idea why the County would do such a thing, but the point of fact is it's our position that the

---

[16] *See, e.g.*, Prusak Aff. at ¶ 9 ("Based on my attendance at some of the meetings and my engagement on behalf of the Owner together with the Owner's legal counsel with the County Representatives, between the meeting of May 20, 2010 and the August 11, 2010 meeting, I came to understand that the Owner and the County had agreed to the following . . . .").

[17] *Izquierdo v. Sills*, 2004 WL 2290811, at *1 (Del. Ch. June 29, 2004) (internal quotation marks omitted).

parties did, in fact, orally agree to abandon the 2007 Settlement Agreement as of August 11, 2010.

THE COURT: Is that what you're going to testify to?[18]

MR. FRABIZZIO:   Whatever Mr. Wilson may have put in a subsequent letter, I can't account for that.

THE COURT:  Is that what you're going to testify to at the hearing? That someone at the County said "yes, we agree to terminate the 2007 Settlement Agreement as of this meeting"?

MR. FRABIZZIO:  That's our position, Your Honor.

THE COURT:  I asked you what you're going to testify to.

MR. FRABIZZIO:  That's my position, Your Honor, yes.[19]

Because counsel would not proffer any evidence—including his own testimony— that would call into question the contemporaneous positions of the parties just days after entering the alleged oral agreement to rescind the 2007 Settlement Agreement, I find that no genuine issue of material fact exists as to whether the parties entered an agreement to rescind on that date; rather, I find that the Defendant has demonstrated that the parties did not enter into such an agreement on August 11, 2010.  As a result, I grant the Defendant's Motion as to Count IV.

---

[18] At oral argument, I questioned Plaintiff's counsel about who intended to testify if this action went forward to trial.  Counsel confirmed that he would be the source of testimony, and acknowledged that he would be required to withdraw from representing the Plaintiff at that time.

[19] Oral Arg. Tr. 20:2-21:14.

## 2. The Alleged August 10, 2012 Oral Settlement Agreement

In addition, Count V of the Plaintiff's Third Amended Complaint seeks a declaration that the parties entered into an enforceable, oral settlement agreement on August 10, 2012. The Plaintiff explains:

> After the parties formulated the Abandonment Agreement by the end of August 2011, the parties then set their focus on discussions/negotiations to formulating a new Settlement Agreement to allow for the construction by the Developer of [a] Specific Sanitary Sewer System . . . . Those discussions/negotiation activities occurred between approximately September 1, 2010 through the meeting of August 10, 2012 at which meeting the parties agreed upon the final outstanding issues for a new Settlement Agreement . . . .[20]

In support of that contention, the Plaintiff explains that, throughout the course of negotiations in 2011 and 2012, the parties came to resolutions term by term; on August 10, 2012, the parties came to a resolution on the final outstanding term, and accordingly, a contract was formed. That theory must fail, however, for at least two reasons. First, prior communications between the parties clearly demonstrate that the parties did not intend to be bound by any agreement until it was memorialized in writing and approved by New Castle County Council. Despite the Plaintiff's assertion that "there never was a 'positive agreement' between both Carter Farm and the County that a writing was required"[21] to effectuate a new settlement agreement, as the Defendant memorialized in an October 19, 2010 email

---

[20] Pl.'s Answering Br. at 45-46.
[21] Pl.'s Sur-Reply Br. at 18.

14

to the Plaintiff, the Defendant had insisted throughout the course of negotiations that "any compromise proposal that [the parties] reach must be approved by the Council Executive and County Council . . . ."[22] In fact, the Plaintiff knew that the 2007 Settlement Agreement had required County Executive and Council approval; in July 2010, the Defendant reminded Plaintiff's counsel, by email, of that fact, noting that "I also need to make it clear that any proposal must be in writing signed by the parties and *would be contingent upon obtaining approval from the Executive and Legislative branches* as we did with the original settlement agreement."[23] Thus, despite the Plaintiff's assertion that a settlement agreement need not be memorialized in writing to bind the parties, and that "[i]t is the presumption that an attorney of record in a pending Action has the lawful authority to accede to the

---

[22] Pl.'s Answering Br. Ex. 15 (Oct. 19, 2010 email from Defendant's counsel to Plaintiff's counsel); *see also id.* Ex. 16 (Nov. 4, 2010 email from Plaintiff's counsel to Defendant's counsel) ("During the discussions at our meeting at your office on October 28[, 2010], I think you will agree that in trying to come to an understanding as to what type of deal would be acceptable *to New Castle County Council and the Executive Branch* that we should limit the Construction Project to the gravity line . . . .") (emphasis added); *id.* Ex. 18 (Feb. 24, 2011 email from Plaintiff's counsel to Defendant's counsel) (noting, in reference to a draft settlement agreement, that "I would really appreciate your trying to keep this project moving forward so that we can have the matter before Council at the earliest possible time"); *id.* (Mar. 15, 2011 email from Plaintiff's counsel to Defendant's counsel) ("You may recall that at our last meeting at your office in January, we all proposed to work diligently to keep the ball moving in order to be able to have this matter submitted to the Members of Council timely in order to secure a Record Plan by October or November 2011 . . . ."); *id.* Ex. 23 (Jan. 4, 2012 email from Plaintiff's counsel to Defendant's counsel) ("Can you please endeavor to 'light the fire' on this matter and schedule a meeting in hopes of coming to a final resolution so that we can move forward for approval with the County Executive and the Council?").
[23] *Id.* Ex. 12 (July 21, 2010 email from Defendant's counsel to Plaintiff's counsel) (emphasis added).

15

settlement of litigation,"[24] the record evidence clearly indicates that the parties here did not intend to be bound until the County Council and Executive approved a written agreement.

Second, at oral argument, Plaintiff's counsel could proffer no potential trial testimony to rebut the record evidence that the parties did not intend to be bound at the August 10 meeting. I asked:

> THE COURT: At the August 10, 2012 meeting, someone on behalf of the County said, "We accept," or "we're bound by those terms," or did something that was an objective assent to this contract being created?
>
> MR. FRABIZZIO: Nobody said anything on that particular day. What I keep saying, Your Honor, is leading up to it, each and every meeting we would have, there would have been terms previously agreed to, and when we got to August of [2012], the final term that had to be agreed to with this mechanism reimbursement back for the cost expended by my client, that finally was resolved.
> When that was finally resolved, we considered, i.e. we being Carter Farm, considered we had a deal in place at that point in time, and all we had to do now is memorialize it by writing.
>
> THE COURT: Nobody on the County ever said "we have a deal"?
>
> MR. FRABIZZIO: Not those words.
>
> THE COURT: Or anything like a contractual assent? It doesn't have to be those words. "We're bound, we agree, this is our deal."
>
> MR. FRABIZZIO: Well, there was, obviously, you know, discussions and statements being made, "hey, we're finally there, it took a long time, three years."

---

[24] Pl.'s Sur-Reply Br. at 19.

16

THE COURT: That's not obvious to me. The County said "we're finally there"?

MR. FRABIZZIO: I said everybody in the room said "it looks like we're finally there." I'm not saying the County said that, Your Honor.[25]

It is clear to me from the statements of Plaintiff's counsel, who participated in the August 10 meeting, that he can point to no objective indications that the Defendant agreed to be bound at that meeting.[26] Instead, as late as March 26, 2013, Plaintiff's counsel himself made clear in a historical summary provided to new County counsel that the parties were still engaged in negotiations as of the August 10, 2012 meeting, at which "terms and conditions [were] discussed and *mostly agreed to in principle* . . . ;"[27] he did *not* indicate at that time his client's position that the parties had entered into an oral settlement agreement by which they intended to be bound. Rather, he indicated only that the Plaintiff remained "hopeful that a Global Resolution can be reached promptly with the new Gordon Administration," and that he "look[ed] forward to a positive feedback and the next scheduled meeting to continue on the path of the execution of a new Settlement Agreement to supersede the existing November 20, 2007 Settlement Agreement."[28] It is clear from these communications that the parties did not in fact believe that a binding oral

---

[25] Oral Arg. Tr. 36:5-37:12.

[26] Because I have decided the enforceability of the alleged oral agreement on other grounds, I need not address whether such an agreement would be enforceable under the statute of frauds.

[27] Def.'s Reply Br. Ex. 38 (Mar. 26, 2013 letter from Plaintiff's counsel to Defendant's counsel attaching Memorandum on Carter Farm and Country Club Estates).

[28] *Id.*

17

agreement had been entered as of August 10, 2012. Again, the Plaintiff's affidavits are merely conclusory, and do not create a triable issue of fact.[29] Consequently, the Defendant's Motion as to Count V of the Third Amended Complaint is granted.

### 3. Implied Covenant of Good Faith and Fair Dealing

Lastly, the Plaintiff alleges in Count VI that the Defendant breached the implied covenant of good faith and fair dealing by "(1) refusing to honor the Agreement between New Castle County and the Developer to abandon the 2007 Settlement Agreement, (2) refusing to honor the new Agreement agreed to by New Castle County and the Developer and (3) as of October 10, 2013 and now asserting that the 2007 Settlement Agreement is the current, final and only Agreement between the parties and now seeks Specific Enforcement."[30] It is not at all clear in what contract, under this theory, the implied covenant of good faith and fair dealing inheres. The Plaintiff appears simply to assert that the Defendant has breached an oral agreement to abandon the 2007 Settlement Agreement, breached

---

[29] *See, e.g.,* Capano Aff. at ¶ 6 ("Subsequent to having formulated the Abandonment Agreement and continuing thereafter through August 2012, the Developer and NCC turned their focus to discussions/negotiations to agree upon all necessary/essential terms and conditions for a new Settlement Agreement to allow for the construction by the Developer of the [regional system] in lieu of the [water treatment plant]. At the last meeting of August 10, 2012, the parties agreed upon the final outstanding terms and conditions for a new Settlement Agreement. As of that date, the parties formulated a new Settlement Agreement with the intention of the parties to be bound and without any positive agreement that it would not be binding until such time as the parties subsequently executed a new Settlement Agreement document.").
[30] Pl.'s Answering Br. at 57.

18

the terms of the alleged August 10, 2012 settlement agreement as well, and has done both in bad faith. This does not state a separate cause of action under the implied covenant, and I have already determined that the parties did not enter into new binding agreements after 2007. Count VI is therefore dismissed.

### 4. Dismissal of the Underlying Litigation

As explained above, the parties agree that they entered into a binding agreement to settle this matter in 2007. I find that no issue of material fact exists and that the 2007 Agreement was (1) not rescinded and (2) not superseded by any subsequent agreement. The Defendant therefore requests that I order the Plaintiff to specifically perform under the 2007 Settlement Agreement or find the Defendant in breach of that Agreement and accordingly dismiss Counts I, II, and III asserted in the underlying litigation filed in 2005. The Plaintiff contends that such an order would be inappropriate, and that I should permit the Plaintiff to maintain Counts I, II, and III, with the caveat that the Defendant may sue the Plaintiff in a separate action for breach of the 2007 Settlement Agreement.

A settlement agreement is an enforceable contract: "Delaware law favors the voluntary settlement of contested suits, and such arrangements will bind the parties where they agree to all material terms and intend to be bound by that

19

contract . . . ."[31]  The parties here agreed to surrender their litigation rights in order

to obtain the benefits of the settlement.  The 2007 Settlement Agreement states:

> The purpose of this Agreement is as follows:

> To set forth the basic terms and conditions resolving that certain litigation known as Carter Farm, LLC v. New Castle County, a political subdivision of the State of Delaware, Civil Action No. 1641-N in the Court of Chancery in and for New Castle County (the "Litigation").  In signing this Agreement, both parties recognize that there is a substantial legal risk to each by virtue of the issues raised in the Litigation which both wish to avoid through the execution of this Agreement.[32]

The Agreement further provides that "[t]his Agreement shall be binding upon and

inure to the benefit of the parties hereto and their successors and assigns."[33]  The

Defendant contends, in its briefing, that the Plaintiff is in breach of the 2007

Settlement Agreement, and seeks equitable relief.  However, the Defendant has

failed to assert counterclaims in its pleadings.  As a result, I need not entertain the

Defendant's request for an order requiring the Plaintiff to specifically perform

under the terms of the 2007 Settlement Agreement.  I note that, despite the

recitations in its Motion, the Defendant has not demonstrated, or attempted to

demonstrate, that the Plaintiff is in material breach of the Agreement at present.[34]

---

[31] *Schwartz v. Chase*, 2010 WL 2601608, at *4 (Del. Ch. June 29, 2010) (internal quotation marks omitted).

[32] Am. Compl. Ex. N (2007 Settlement Agreement) at Art. I.

[33] *Id.* at Art. V.

[34] Despite the fact that the 2007 Settlement Agreement provides that time is of the essence, the existing record indicates that both parties were content to leave the Agreement in place during an extensive negotiation period.

20

Nevertheless, the parties to the 2007 Settlement Agreement contractually agreed to extinguish their respective rights to litigate the underlying action in exchange for the rights and obligations set forth in that Agreement.[35] In other words, giving up the right to adjudication of Counts I, II, and III was a part of the consideration for the Settlement Agreement. As a result, because I have found that the parties are bound by the 2007 Settlement Agreement, I also find that the Plaintiff is not entitled to the relief it seeks under Counts I, II, and III; those Counts must accordingly be dismissed. The Plaintiff, having effectively settled this matter in 2007, is not entitled to its revivification on the grounds that market conditions now make that settlement unpalatable, or that the Defendant was willing to negotiate, unsuccessfully as it turns out, to set aside the 2007 Settlement Agreement and replace it with another proposed plan of development. The parties are bound by their contract settling this matter as of 2007. Of course, if either party believes the

---

[35] The Plaintiff does not contend that the 2007 Settlement Agreement lacked essential terms or was otherwise not binding. However, the Plaintiff contends that "when a Settlement Agreement contemplates a series of mutual obligations to be performed by the parties intended to ultimately lead to the Stipulation of Dismissal of the Litigation and the execution of Mutual Releases, this Court will not convert the Settlement Agreement into a form of Final Judgment." Pl.'s Answering Br. at 30. The Settlement Agreement at issue here, however, does not condition dismissal of the underlying claims on the fulfillment of all terms under the Agreement; rather, it provides only that "[a]t such time as the final settlement documents are executed, the parties shall also execute a Stipulation of Dismissal of the Litigation and Mutual Releases with respect to those items encompassed within the Litigation with each party to bear their own costs and attorney fees." Third Am. Compl. Ex. N (2007 Settlement Agreement) at Art. V. Thus, although the Agreement anticipates that additional documents will be executed before the parties submit a formal Stipulation of Dismissal to the Court, it does not *condition* the Plaintiff's release of claims on the execution of those documents. Rather, the notion that the Agreement was conditional or lacked material terms is belied by the fact that the Plaintiff spent considerable time and expense in an attempt, through negotiation or litigation, to withdraw from that Agreement.

21

other has breached its obligations under the 2007 Settlement Agreement, it is free to pursue a breach of contract claim in a separate action as it finds appropriate.

## IV. CONCLUSION

For the foregoing reasons, this action is dismissed with prejudice. An appropriate Order accompanies this Memorandum Opinion.

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

CARTER FARM, LLC, a Delaware )
Limited Liability Company, )
                             )
              Plaintiff, )
                             )
     v.                       ) C.A. No. 1641-VCG
                             )
NEW CASTLE COUNTY, a political )
subdivision of the State of Delaware, )
                             )
             Defendant. )

## ORDER

AND NOW, this 17th day of July, 2014,

For the reasons stated in my July 17, 2014 Memorandum Opinion, IT IS

HEREBY ORDERED that this action is DISMISSED.

SO ORDERED:

                                   /s/ Sam Glasscock III

                                 Vice Chancellor